BANK OF OKLAHOMA, N.A., Appellee,

v.

WELCO, INC., and Richard K. Ledbetter, Appellants.

No. 82374.

Court of Appeals of Oklahoma, Division No. 3.

March 7, 1995.

Rehearing Denied May 2, 1995.

---

James F. Howell, and Allen B. Massie, Midwest City, for appellant, Welco, Inc.

Raymond D. Munkres, Oklahoma City, for appellant, Richard K. Ledbetter.

Michael A. Rubenstein, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellee.

## OPINION

ADAMS, Judge:

Richard K. Ledbetter and Welco, Inc., appeal a trial court summary adjudication order in favor of the Bank of Oklahoma (BOK). The trial court entered judgment against Welco for the amount due on a promissory note executed by Welco and against Ledbetter as guarantor of that debt. For reversal, the appellants argue BOK was not entitled to summary judgment but that Welco and Ledbetter were entitled to judgment exonerating them from further liability for the debt represented by the note. We agree.

## STANDARD OF REVIEW

■ In addressing the appellants' argument that BOK was not entitled to summary judgment, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and BOK was entitled to judgment as a matter of law. *Perry v. Green*, 468 P.2d 483 (Okla.1970). All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Welco and Ledbetter. *Ross v. City of Shawnee*, 683 P.2d 535 (Okla.1984).

■ Similarly, in determining whether Welco and/or Ledbetter were entitled to summary judgment, we must review the same material but consider it in the light most favorable to BOK. If the facts revealed by that material, when so considered, and all reasonable inferences from those facts are consistent only with judgment for Welco and/or Ledbetter, we must conclude the trial court should have granted judgment to Welco and/or Ledbetter. In both instances, we are limited to the issues actually presented below, as reflected by the record which was before the trial court, rather than one that could have been assembled. *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17 (Okla.1985).

## FACTS

In 1981, two commercial loans were made to Welco by BOK's predecessor, Fidelity Bank, N.A. Concurrently, Ledbetter, as Welco's President and major stockholder, executed two unlimited and continuing guaranty agreements covering the present and future debts of Welco. On January 1, 1984, the loans were consolidated into a single promissory note, No. 59 (Welco note), and renewed several times that year, the last time on October 18, 1984. All of the Welco notes were executed by Ledbetter as its President. On January 21, 1985, Ledbetter and his wife executed a second mortgage on their residence in favor of BOK to secure the last renewal of the Welco note. First Security

Bank (FSB) held the first mortgage on the Ledbetter's residence.

Welco defaulted on its note. Although Welco, with BOK's consent, liquidated assets that had been pledged to secure the Welco note and paid those proceeds to BOK, a substantial amount remained unpaid. Meanwhile, the Ledbetters defaulted on their debt to FSB. As a result, in August, 1991, FSB sued to obtain judgment against the Ledbetters on its note and foreclose the first mortgage on the Ledbetters' residence (the 1991 case). FSB named BOK as a party defendant who claimed a lien on the mortgaged property.

BOK filed an answer admitting it claimed an interest in the property. BOK also cross-claimed against the Ledbetters, alleging the Welco note was in default and asking to foreclose its second mortgage on the residence which was given to secure the Welco note. It became apparent that the value of the Ledbetters' residence would not be sufficient to satisfy FSB's first mortgage, and BOK requested permission to join Welco as a third-party defendant in order to obtain judgment on the Welco note. BOK also asked to amend its cross-claim against Ledbetter to seek an *in personam* judgment for the amount due under his guaranty. The trial court denied that request in May, 1992.

Two days later, BOK filed this action, and on June 24, 1992, BOK dismissed its cross-claim in the 1991 case without prejudice. In September, 1992, the trial court in the 1991 case entered judgment for FSB and ordered the residence sold. FSB purchased the property at the sheriff's sale and the trial court confirmed the sale on December 4, 1992. BOK did not file a request for a deficiency judgment.

In February, 1993, Welco and Ledbetter jointly moved to dismiss this action, arguing that principles of *res judicata*, based upon the judgment in the 1991 case, barred BOK's claims. In March, 1993, Ledbetter filed a motion for summary judgment with relevant evidentiary materials attached. Ledbetter argued, *inter alia*, that pursuant to 12 O.S. 1991 § 686 and 15 O.S.1991 §§ 338 and 344, BOK's failure to seek a deficiency judgment in the 1991 case discharged the Welco note

and exonerated him from liability as a guarantor. Eighteen days later, Welco and Ledbetter jointly filed another motion for summary judgment raising basically the same arguments contained in Ledbetter's summary judgment motion. By order filed on May 10, 1993, the trial court denied all three motions.

BOK then moved for summary judgment on August 13, 1993. Welco and Ledbetter filed a joint objection to BOK's motion that incorporated by reference all of their previously denied motions. In its order granting summary adjudication in favor of BOK, the trial court found Welco and Ledbetter jointly and severally liable for Welco's note, No. 59, in the principal amount of $124,151.83, together with accrued interest of $82,343.78 and post-judgment interest. BOK filed a motion for attorney fees which was sustained by the trial court. Welco and Ledbetter appeal both orders.

## ANALYSIS

Although they filed separate briefs in chief, both Welco and Ledbetter argue that reversal is required because BOK's failure to obtain both an *in personam* judgment and deficiency judgment in the foreclosure action satisfied Welco's indebtedness on the note and exonerated Ledbetter's guaranty liability. As authority for their argument, both rely on *Apache Lanes, Inc. v. National Educators' Life Insurance Company*, 529 P.2d 984 (Okla.1974), appeal on remand, 555 P.2d 600 (Okla.1976), wherein the Court determined the creditor's failure to obtain a deficiency judgment after the sale of the mortgaged property discharged the debtor's obligation and exonerated the six guarantors' liability on the note.

BOK claims there are two important facts in the present case that distinguish it from *Apache Lanes* and render it inapplicable: (1) Welco was never named or joined in the foreclosure action; and (2) Having dismissed its *in rem* claims against the Ledbetters after it was prevented from joining Welco in the lawsuit, BOK did not receive a judgment in the foreclosure action from which it could have obtained a deficiency judgment. The

*Apache Lanes* creditor not only sued to foreclose its mortgage against the debtor but sought judgment against the debtor and six guarantors on the note in the initial foreclosure case.

As we view their arguments, the potential liability of both Welco and Ledbetter hinges on our interpretation of 12 O.S.1991 § 686 in deciding one pivotal question—Under § 686, is a creditor, who has been joined as a party to a mortgage foreclosure action because of its lien on the mortgaged property, required to proceed in that action to enforce its lien *and* the debt which the lien secures? We must find our answer in the language of the section.

 When interpreting statutes, our goal is to ascertain and, if possible, give effect to the legislative intent and purpose as expressed in the statute. *Public Service Co. of Oklahoma v. State ex rel. Corporation Commission,* 842 P.2d 750 (Okla.1992). If the legislative intent is plainly expressed, however, no further inquiry will be necessary. *Hughes Drilling Co. v. Morgan* 648 P.2d 32 (Okla.1982). We must consider the statute as a whole, not just individual provisions. *Keck v. Oklahoma Tax Commission,* 188 Okl. 257, 108 P.2d 162 (1940). We may resolve any doubt about the meaning of a statute by reference to its history. *Lekan v. P & L Fire Protection Co.,* 609 P.2d 1289 (Okla.1980).

The first sentence of § 686 has remained unchanged since the statute's adoption in 1893, and provides, in pertinent part:

> In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgment or judgments *shall be rendered* for the amount or amounts due as well to the plaintiff *as other parties to the action having liens upon the mort-*

*gaged premises by mortgage or otherwise,* with interest thereon ... (Emphasis added).

While interpreting the first sentence of § 686 to determine whether an order ascertaining the amount of deficiency in a foreclosure action was a true judgment or a mere clerical act, the Court, in *Bartlett Mortgage Co. v. Morrison,* 183 Okl. 214, 81 P.2d 318 (1938), stated:

> It must be noticed that it is commanded, by the use of the word *shall,* that judgment be taken for the money due. This means simply that the amount of the debts, for which a lien or charge on the property has been given, shall be ascertained and *personal judgment* rendered therefor ... Therefore, it is arranged by statute that the issues between the parties shall be decided in one judgment. (Emphasis added).

 It is mandatory that "judgment(s) shall be rendered for the amount or amounts due," and considering the explanation by the *Bartlett* Court and the structure of the first sentence, that same command appears to extend to the next phrase in the same sentence—"as well to the plaintiff *as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise.*" Although the issue of whether § 686 requires joinder of all other persons claiming an interest in the mortgaged property has been addressed by the Oklahoma Supreme Court, the specific issue before us has not.[1] The language is susceptible of only one reasonable interpretation, *i.e.,* any lien on the property which is the subject of the action and which is held by a *party to the action* must be adjudicated in one action.

This conclusion would be inconsequential

---

1. The Oklahoma Supreme Court, while reviewing the first sentence of § 686, stated that "the mortgage foreclosure statute provides that *all parties* who have liens upon mortgaged property *may be joined* in the proceeding." *First Federal Savings and Loan v. Nath,* 839 P.2d 1336 (Okla. 1992). As its authority, the Court cited the following passage from *McCredie v. Dubuque Fire & Marine Ins. Co.,* 63 Okl. 184, 163 P. 535, 536 (1916):

> A junior encumbrancer *may* be joined in the foreclosure. Although it is not an *indispensable* party to foreclosure brought by a senior encumbrancer, *if it is not joined its lien remains unaffected by the decree.* (Emphasis in original).

However, unlike the present case, both *Nath* and *McCredie* deal with people who were not made parties to the foreclosure actions.

on this record[2], were it not for the "anti-deficiency" provisions of § 686, which were added by the Legislature in 1941. The 1941 amendment added the following language:

Notwithstanding the above provisions *no judgment shall be enforced for any residue of the debt remaining unsatisfied* as prescribed by this Act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, *the party to whom such residue shall be owing* may make a motion in the action for leave to enter a deficiency judgment ... If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount *shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.* (Emphasis added).

■ The Court discussed the purpose for the 1941 amendment in *Riverside National Bank v. Manolakis,* 613 P.2d 438, 440 (Okla. 1980):

Anti-deficiency statutes much like our § 686 were adopted in many states *to protect mortgagors from personal liability* after a foreclosure sale has been effected at a time of greatly deflated land values in a depressed economy. Some of these statutes effect a mere restriction upon the time period during which recovery of deficiency may be sought ... New York and Oklahoma went even further. In these two states the mortgage debt is deemed satisfied when deficiency recovery was not timely sought. (Emphasis added).

Now, a deficiency judgment is a post-judgment prerequisite to the issuance of a general execution for the enforcement of the un-

paid balance due upon the original judgment. *Baker v. Martin,* 538 P.2d 1048 (Okla.1975).

■ Considering both the language and history of § 686, we must conclude that the Legislature intended that once a creditor is made a party to a foreclosure action it must proceed therein until the validity and priority of its lien is adjudicated and the amount of the debt which its lien secures is determined. The creditor then must file a motion for deficiency judgment within 90 days after the sale of the mortgaged premises or else suffer the consequences, as discussed by the *Riverside* Court, *i.e.,* the debt for which the mortgage stands as security will be deemed satisfied.[3]

■ For reasons which are discussed below, the application of this principle to the liability of Welco and Ledbetter must be examined individually. It is undisputed that the debt for which the mortgage executed by the Ledbetters stood as security, and therefore the debt which is deemed satisfied under § 686, was the Welco note. BOK's failure to take all steps necessary to proceed against Welco in the 1991 action and timely request a deficiency judgment causes the Welco note to be deemed satisfied. The uncontroverted facts shown by the record, together with all reasonable inferences from those facts, are consistent only with judgment for Welco.

■ However, Ledbetter is only a guarantor of that debt, and in *Riverside* the Court rejected the argument that a creditor's failure to seek a deficiency judgment automatically impairs a guarantor's right to proceed against the principal debtor and therefore exonerates the guarantor. Whether a guarantor is exonerated under these circumstances depends on the nature of the guarantor's undertaking.

■ The rights under a guaranty agreement are regulated by 15 O.S.1991 §§ 321 to

**2.** In the 1991 case, the trial court apparently did not adjudicate BOK's lien claim, but according to the journal entry of judgment and despite BOK's dismissal of its cross-claim, the trial court reserved that issue until after the sale of the property.

**3.** BOK was prevented from so proceeding by the trial court's order in the 1991 case denying BOK

permission to amend its cross-claim and file a third-party petition against Welco. However, BOK did not appeal that ruling, but dismissed its claim and allowed the judgment in the 1991 case, including the ruling denying it the right to proceed against Welco and Ledbetter, to become final.

344. *Riverside,* 613 P.2d at 441. Section 338 exonerates a guarantor where by any act of the creditor, without the consent of the guarantor, the original obligation is altered, impaired or suspended. Section 344 provides that where a debtor's obligation is discharged by operation of law, the guarantor is not exonerated, absent the intervention or omission of the creditor. *Apache Lanes,* 529 P.2d at 986.

In *Riverside,* after failing to seek a deficiency judgment in its foreclosure action, the bank sought to enforce the guarantor's liability for payment of the principal debtor's obligation. Relying on *Apache Lanes,* the trial court determined the principal debtor's obligation became satisfied when the bank failed to file a motion for deficiency judgment within 90 days of the foreclosure sale. However, the *Riverside* Court reversed that judgment because the guarantor had waived his § 344 defenses when he agreed that "his liability would not be 'affected or impaired' by any 'failure, neglect or omission' of the bank to protect, in any manner, the collection of the indebtedness or the security given therefor." 613 P.2d at 442.

No similar waiver language appears in the two guaranty agreements executed by Ledbetter, both of which read, in pertinent part:

> The obligation of the Guarantor hereunder is an absolute, unconditional and continuing guaranty of such current or future indebtedness and any renewals and extensions thereof and any substitution therefor up to the principal sum of *UNLIMITED* Dollars, even though the Indebtedness itself may exceed said sum, irrespective of any security for said Indebtedness; and Guarantor waives notice of any and all such Indebtedness.

> It is understood that the death, dissolution, or insolvency of, or institution of proceedings in bankruptcy against above-named Debtor shall make his Indebtedness mature hereunder at the Bank's election. The Guarantor may, without however affecting the liability hereunder to pay Indebtedness then existing, terminate the obligation to pay Indebtedness of Debtor created thereafter by delivering written notice of termination to the Bank. Death

of Guarantor shall not operate to terminate the obligation to pay Indebtedness of Debtor thereafter created until the Bank shall have received actual notice thereof.

> The bank shall not be required, before enforcing the liability of the Guarantor hereunder, to exhaust its remedies against Debtor or any other person liable upon the Indebtedness or to attempt to collect upon or resort to any security for the Indebtedness, and Guarantor shall not be entitled to any right of subrogation whatsoever until the Indebtedness has been paid in full. Guarantor hereby waives presentment, demand for payment, protest and notice of protest and non-payment of the Indebtedness and notice of acceptance of this Guaranty by the Bank.

Accordingly, as in *Apache Lanes,* the failure of BOK to seek a deficiency judgment impaired Welco's obligation on note no. 59, and pursuant to § 344, Ledbetter's guaranty liability was exonerated. The facts shown by the record, together with reasonable inferences from those facts, are consistent only with judgment for Ledbetter.

### CONCLUSION

The facts revealed by the evidentiary materials presented to the trial court, when viewed in the light most favorable to BOK, together with all reasonable inferences from those facts are consistent only with the conclusion that BOK is barred as a matter of law from proceeding against Welco and Ledbetter on its claim. Our decision on this issue makes discussion of the appellants' other allegations of error unnecessary. The trial court's judgment is reversed, and the case is remanded with instructions to enter judgment in favor of Welco and Ledbetter.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

GARRETT, C.J., and HUNTER, J., concur.