The F & M BANK & TRUST COMPANY, Plaintiff,

v.

Michael M. SAMARA, and Michael Samara Celebrity Club, Inc., d/b/a Celebrity Club, Inc., Defendants/Appellants,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant/Appellee.

No. 84697.

Court of Appeals of Oklahoma, Division No. 4.

Dec. 12, 1995.

Michael D. Davis, Steven M. Harris, Doyle & Harris, Tulsa, for Defendants/Appellants.

Jeffrey D. Hassell, Stephen W. Lake, Gable & Gotwals, Tulsa, for Defendant/Appellee Prudential Ins. Co. of America.

RAPP, Vice Chief Judge.

Trial court defendants, Michael M. Samara and Michael Samara Celebrity Club, Inc., d/b/a Celebrity Club, Inc. (Celebrity), appeal the trial court's judgment in this foreclosure action which applied funds in the possession of a court-appointed receiver to the judgment debts owed to plaintiff, the F & M Bank & Trust Company (F & M), and defendant, the Prudential Insurance Company of America (Prudential).

## I. BACKGROUND

A series of transactions between F & M and Samara resulted in Samara giving F & M two notes in 1991. One, with which we are not here concerned, was secured by realty known as the "Condo." The second note, with which we are concerned, was secured by a mortgage on realty in favor of F & M known as the Celebrity Club Property (the Property). The Property mortgage also contained a security interest and financing statement on fixtures and personalty associated with the Property.

Samara, at some point, the exact date of which is not here of record, leased the Property to the additional defendant, Celebrity.[1]

In 1988, Prudential initiated suit in Tulsa County against Samara and obtained judgment in April 1992. Prudential properly recorded its judgment, thereby becoming a non-mortgage judgment lienholder or creditor of Samara.

Samara defaulted on the Property note. F & M initiated this foreclosure on the Proper-

---

1. Samara claims F & M took its mortgage on the Property subject to Celebrity's lease. Based on this claim, the lease then apparently occurred pre–1991.

ty against Samara, Celebrity,[2] and Prudential.[3] F & M early moved for and obtained the appointment of a receiver to collect rents and manage the Property.

F & M initially obtained partial judgment on its note and mortgage, together with a court-ordered sale of the Property, wherein sale proceeds were to be applied to costs and F & M's note, with the residue to the Court Clerk. However, after naming Prudential as a third party defendant, the trial court entered an additional partial judgment adjudicating Prudential's lien as a second lien, and directing payment of sale proceeds, after payment of costs and F & M's judgment, to Prudential. A sheriff's sale was conducted and subsequently confirmed on August 16, 1994.[4]

The receiver filed an application to terminate receivership, exonerate bond, and approve final accounting, requesting an order to disburse approximately $8,800 in rents then in his possession. F & M and Prudential both responded to the receiver's motion. F & M urged that it be paid the balance due on its mortgage—$797.23. Prudential responded that, in equity, it should receive all funds then in the receiver's hands.

The trial court entered its order, stating in part, "The Application is GRANTED. F & M's and Prudential's requests for distribution of a portion of the funds held by Receiver are granted." The trial court ordered the receiver to pay F & M the balance due on its first mortgage, $797.23, and the remaining balance to Prudential. Samara and Celebrity appeal.

## II. RIGHTS OF F & M

■ Samara and Celebrity present two allegations of error. The first allegation is that the trial court erred in its award of $797.23 to F & M. Samara urges that it is error to apply any of the remaining balance on F & M's first mortgage because F & M failed to file a motion for deficiency judgment as required under 12 O.S.1991, § 686. However, based upon the mortgage agreement between the parties, and the nature of a foreclosure receiver, we find that application of the funds, as directed by the court, was appropriate.

The "Mortgage, Security Agreement and Financing Statement" states:

[Mortgagee], at its sole option, may have a Receiver appointed by the Court to take charge, possession and control of the Mortgaged Premises, to rent the same and to receive and collect the rents, issues and profits thereof, accrued and to accrue, under the direction of the Court, ... *and any amounts so collected by said Receiver will be applied, under the direction of the Court, to payment of any judgment rendered or amount found due upon foreclosure of this Mortgage.* (Emphasis added.)

Thus, by the very terms of the agreement between Samara and F & M, the rents and profits collected by the receiver were to be applied "to payment of any judgment rendered or amount found due upon foreclosure of this Mortgage." Section 686 may not be applied to nullify this specific agreement between Samara and F & M.

■ We also find that Section 686 simply does not apply to bar recourse to the funds of a court-appointed receiver for application against the foreclosure judgment debt. The receivership here is an integral part of the foreclosure. Indeed, such a prejudgment appointment in a foreclosure action is appropriate where the property involved is probably insufficient to discharge the mortgage debt. 12 O.S.1991, § 1551(2)(b). Thus, the law an-

---

2. Celebrity was made a party based upon its leasehold interest in the Property. Celebrity argued in the foreclosure proceeding that its interest was prior and superior to F & M. The trial court rejected this argument and extinguished the lease. Samara assigned his interest in the rents held by the receiver to Celebrity, because of the lease's "breach" occasioned by the trial court's lease extinguishment in the foreclosure action and to reimburse the "damages" caused by the "breach." It is noted this assignment *did not* occur until after foreclosure judgment.

3. Prudential was added as an additional defendant because, if it were not joined, its lien on the realty would be unaffected by F & M's foreclosure judgment. *See McCredie v. Dubuque Fire & Marine Ins. Co.,* 63 Okla. 184, 163 P. 535 (1916).

4. The exact date of the sheriff's sale is not of record but appears to have been in July 1994.

ticipates that monies coming into the possession of a receiver will be used to satisfy the mortgage judgment debt.

■ We hold that in a foreclosure action, where a receiver has been appointed, the failure to file a motion for deficiency judgment, according to the terms of section 686, results in the deemed satisfaction of the debt by the application of proceeds of sale of the mortgaged property *and application of appropriate funds in the possession of the receiver*. Thus, the "deficiency" is any portion of the judgment debt unsatisfied after application of the sale proceeds and all monies collected by the receiver in the foreclosure action.

## III. RIGHTS OF PRUDENTIAL

■ Celebrity secondly alleges error in applying the remaining $8,000 of the receiver's funds to Prudential's judgment. It alleges that Prudential, likewise, had the obligation to file an application for deficiency judgment before it could proceed against the receiver's funds. We disagree.

■ The funds of a foreclosure receiver are not property separate from the foreclosure proceedings to be treated as "other" property of the debtor. Thus, we find no merit to the claim that the receiver's funds were personalty that could only be attached by execution. The trial court determined that the monies coming into the possession of the receiver, appointed within foreclosure proceedings, are funds integral to those proceedings for application, as may be necessary, to the foreclosure judgment debt(s).

Furthermore, the plain language of section 686 indicates it applies to extinguishment of the debt owed to the foreclosing mortgagee. This section is not applicable to a judgment creditor whose lien is adjudicated to be valid, upon application of the foreclosing mortgagee, *but who does not receive any proceeds from the sale of the mortgaged property*.

Finally, Celebrity's argument again overlooks the agreement which Samara executed as part of the mortgage transaction. We reiterate that Samara agreed that funds taken into the possession of the receiver would be paid upon the "judgment rendered or amount found due upon foreclosure." Here, Prudential was named as a party defendant and its previous judgment was adjudicated, within the foreclosure proceedings, as a second lien in the amount of $574,292.12, with direction that proceeds of the foreclosure sale be paid, after payment of costs and F & M's judgment, to Prudential. Again, the specific contractual obligation controls and Samara cannot complain of the application of the receiver's funds in keeping with the mortgage agreement he executed.

## IV. CONCLUSION

We find no error in the trial court's judgment. That judgment is AFFIRMED.

GOODMAN, P.J., and STUBBLEFIELD, J., concur.